[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brought this summary process action to recover possession of premises located in Building W at the Bradley Air Cargo Facility in Windsor Locks for nonpayment of rent for the months of January, February and March, 1989 and for violation of several provisions of the lease between the parties. In June, 1984, the parties entered into a ten year lease of space at the Bradley Air Cargo Facility at Bradley International Airport. Plaintiff has a ground lease from the State of Connecticut for the premises under which it sublet these premises to defendant. Defendant has operated a warehouse CT Page 945 for unclaimed items imported through Bradley International Airport in bond and a trucking business. Mr. Glynn, doing business as Brian Motors, Inc.
Defendant had sublet portions of the premises to others, including customs brokerage firms. He also created office space for U.S. Customs. In 1986, Mr. Glynn began negotiations with the Bureau of Aeronautics over a method of compensating Glynn for the space occupied by U.S. Customs. Since plaintiff had a lease with the State, it was decided that this could be accomplished by giving Roncari a credit against rent otherwise owed which it, in turn, would pass through to defendant. The Bureau insisted on documentation regarding the size of the space provided to Customs and the cost of renovating the premises to accommodate U.S. Customs. According to Glynn, that took from six months to a year and one-half to accomplish. In January, 1988, the Bureau proposed a formula for determining the size of the credit. At a meeting in February, 1988, attended by employees of the Bureau, plaintiff and Mr. Glynn, Mr. Glynn stated he felt he should get fair market rental value for the space and wanted to submit a counter proposal which was done in March. In June, 1988, the Bureau notified the parties that the State of Connecticut had finalized its position and would allow a credit of $21,192.00.
Defendant claims that it did not owe rent for the months of January, February and March, 1989 because the credit from the State had not been exhausted. Plaintiff began to pass the credit through at the rate of about $7,000.00 per month in October. It also deducted from the credit due defendant, $1,500.00 in attorney's fees, $1,755.00 for a security deposit and $157.00 in interest. Mr. Glynn testified that he had agreed in December, 1987, to pay $500.00 as an attorney's fee and to increase the size of his security deposit, but he was not aware that those items were to be deducted from the credit. Mr. Glynn also took the position he was due interest on credit from February, 1988, although plaintiff did not itself begin using the credit until after September 9, 1988. In March, 1989, defendant's employee, Todd Loiseau, wrote plaintiff a letter claiming entitlement to 29 months of interest on the credit. That meant, defendant claimed, rent was not owned plaintiff until April, 1989. That letter was characterized by plaintiff's witness as "the straw that broke the camel's back." Plaintiff had not agreed to pay interest on or to credit defendant with interest on the credit from the State of Connecticut. At trial, that witness also testified that rent for the month of January was covered by the credit from the State. Thus, when plaintiff issued its notice to quit on March 16, 1989, rent for the months of February and March were unpaid. However, the lease provides a 30 day grace period, so only rent for February remained CT Page 946 due and unpaid on March 16. While defendant argues that the obligation for February and March was the subject of a good faith dispute, the evidence does not support that.
Defendant claims that plaintiff acquiesced in his decision not to pay rent until the matter of the credit was settled. Indeed, from April 22, 1988 until April, 1989, no rent checks were tendered to plaintiff. While plaintiff did not move to evict defendant until March, 1989, it was entitled under the lease to payment and to interest on the unpaid rent. It was not until this litigation that defendant questioned the propriety of plaintiffs deductions from the credit.
Defendant has raised as a special defense the equitable doctrine against forfeiture. That doctrine allows a court to grant relief to prevent a forfeiture of the lease based on technical grounds not occasioned by a party's willful neglect, where the delay has been slight, the loss to the lessor small and the failure to grant relief results in such hardship to the tenant as to make it unconscionable literally to enforce the lease terms. Nicoli v. Frouge Corp., 171 Conn. 245, 247 (1976) and cases cited therein. The doctrine is available in cases of nonpayment of rent "upon payment or tender of all arrears of rent with interest." Mobilia, Inc. v. Santos, 4 Conn. App. 128,131 (1985), citing Zitomer v. Palmer, 38 Conn. Sup. 341, 345
(Super.Ct., App. Sess. 1982). While defendant claims entitlement to all the credit, without deduction, he has not tendered the arrearage with interest. Indeed, as in Mobilia, he willfully withheld the monthly payments for February and March. Thus, he has not met the conditions for invocation of the doctrine.
Plaintiff also claimed several other breaches of the lease, including failure to provide copies of certificates of insurance and to obtain prior approval of plaintiff before subleasing portions of the premises, failure to maintain the staging area in a clear and orderly manner failure to comply with fire safety code regulations and with parking unauthorized trucks and trailers on the premises. The lease agreement provides that if defendant's failure to perform its obligations continues for fifteen days, it will be in default unless it has begun to cure the default and diligently pursues a cure, and accomplishes it within a reasonable period.
Only the issue of the insurance certificates had been raised with Mr. Glynn by plaintiff's operations manager. In 1988, Mr. Glynn gave Mr. Calsetta the name and phone number of his insurance agent who then provided information regarding his coverage. That information revealed that the coverage did not meet the lease requirements. Mr. Calsetta did tell Mr. Glynn CT Page 947 that plaintiff would agree to coverage in lower amounts if defendant did not go onto the airport ramp. However, it appears that neither party thereafter pursued the issue.
The evidence regarding subtenants proves that plaintiff was aware of defendant's subtenants. After prompting from plaintiff, defendant provided unsigned copies of the sublease for two of them. Plaintiff voiced no objection to them. In August, 1988, defendant sublet to Miami Aircraft Support and sent a copy of that lease to Mr. Calsetta. While he objected to this subtenant, he never expressed that disapproval to defendant.
With regard to the other alleged defaults, the testimony showed that when problems were brought to Mr. Glynn's attention, they were taken care of and cleared up. While same of these problems were of a recurring nature, given the nature of defendant's business and the lease provisions, plaintiff had an obligation to notify defendant of claimed defaults if it wished to rely on them in an eviction action.
Plaintiff has proved nonpayment of rent for the month of February and is therefore entitled to a judgment of possession.
WENDY W. SUSCO JUDGE, SUPERIOR COURT.